UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO. _____

SECURITIES AND EXCHANGE COMMISSION,

        **Plaintiff,**

v.

STEPHONE N. PATTON,
STAR OIL AND GAS COMPANY, INC.,
NORTH GULF ENERGY CORPORATION, INC., and
PATTON FARMS, INC.,

        **Defendants.**

_____/

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF AND
DEMAND FOR JURY TRIAL**

Plaintiff Securities and Exchange Commission (the "Commission") alleges as follows:

## I. INTRODUCTION

1. From at least February 2020 through March 2023 (the "relevant period"), Stephone N. Patton and his companies Star Oil and Gas Company, Inc. ("Star Oil"), North Gulf Energy Corporation, Inc. ("North Gulf"), and Patton Farms, Inc. ("Patton Farms") (collectively "Defendants") engaged in a scheme to defraud investors, including senior investors.

2. Patton, a convicted felon in Florida and Mississippi, incorporated Florida-based Patton Farms, and Mississippi entities Star Oil and North Gulf, and

proceeded to make over 30 filings with the Commission falsely claiming to have raised over $294 billion in investor funds for these companies, through the sales of securities. Additionally, Patton created a publicly accessible website for Star Oil, which he used, among other things, to promote lies about the company's annual revenues, number of employees, numbers of oil platforms and operations. Patton also drafted bogus shareholder agreements full of false and misleading statements as part of the scheme.

3. With his filings, website, and shareholder agreements, Patton was able to craft an illusion of himself as highly educated, falsely stating that he had earned multiple degrees from prominent universities and was the head of a successful enterprise, to entice investors. Patton used every lie at his disposal to entice investors in various states to purchase shares of stock in Star Oil, North Gulf, and Patton Farms.

4. Patton solicited investors with pressure tactics, false and misleading statements about himself and his companies' operations, assets, and revenues promising large monthly dividend payments and substantial returns on investments.

5. In reality, none of Patton's companies were operational, generated revenues, or had any assets. Moreover, none of the companies ever made any

dividend payments or generated any returns for investors. Patton pocketed every dollar he raised from investors.

6. By engaging in this fraudulent conduct, Defendants violated, and unless enjoined, are reasonably likely to continue violating, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) and Rule 10b-5 thereunder of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]. Unless enjoined, Defendants will continue to violate the federal securities laws.

7. The Commission also seeks an order imposing an officer and director bar against Patton, and an order mandating that Star Oil and Patton permanently deactivate www.staroilandgascompanies.webstarts.com so that it is not viewable to internet users.

## II. DEFENDANTS

8. Stephone N. Patton, age 52, is believed to currently reside in Mississippi. According to criminal records[1], Patton has used several false addresses and aliases in the past. Patton falsely lists his residence at a multimillion-dollar estate in Coral Gables, Florida. He also lists multiple Mississippi addresses and a Texas address in his filings on the SEC's Electronic

---

[1] *See State of Florida v. Stephone Napoleon Patton,* Case No. 16-05888-CF*; State of Florida v. Stephone Napoleon Patton,* Case No. 1408208MMANO;
*State of Florida v. Stephone Napoleon Patton,* Case No. 1114595CFANO.

Data Gathering, Analysis, and Retrieval system (EDGAR),[2] as well as in Florida and Mississippi state corporate records. Patton is president and CEO of Star Oil, North Gulf, and Patton Farms. Patton is a serial fraudster with multiple criminal convictions. Most recently, Patton pled guilty in December 2017 to several felony counts of identity theft violations in Pinellas County, Florida and was sentenced to 2 years in prison. Additionally, he has prior convictions in Florida and Mississippi for defrauding financial institutions, check fraud and grand larceny.

9. Star Oil is a Mississippi corporation with purported principal places of business in Dallas, Texas and Columbia, Mississippi. Star Oil's principal places of business in its EDGAR and corporate filings are false. In Form D filings by Star Oil from February 2020 through December 2022, Star Oil claims it raised over $113 billion from at least 437 investors. On its website, Star Oil states it operates around the world and has "31 offshore oil platforms and 6 production natural gas platforms" and generates "annual revenues of $16 billion." The website also advertises Patton as Star Oil's "Owner and President."

10. North Gulf is a Mississippi corporation with its purported principal place of business in Columbia, Mississippi. In Form D filings from March 2021

---

[2] EDGAR is the primary system for companies and others for filing documents with the Commission as required under the Securities Act, the Exchange Act, the Trust Indenture Act of 1939, and the Investment Company Act of 1940.

through March 2023, North Gulf claims it has raised over $90 billion from at least 179 investors.

11. Patton Farms is a Florida corporation with its purported principal place of business in Wimauma, Florida. In Form D filings from March 2020 to March 2023, Patton Farms claims it has raised over $91 billion from at least 141 investors.

### III. JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a)]; Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

13. This Court has personal jurisdiction over Defendants and venue is proper in the Middle District of Florida. Defendants listed multiple Florida addresses in corporate and EDGAR filings as their principal place of business and/or mailing address, including Patton Farms' purported principal place of business in Wimauma, Florida, which is located in this district. Additionally, when soliciting investors, Patton told them that he lived in the state of Florida and conducted business in the state.

14. In connection with the conduct alleged in this Complaint, Defendants, directly or indirectly, singly or in concert with others, made use of the means or

instrumentalities of interstate commerce, the means and instruments of transportation or communication in interstate commerce, or the mails.

IV. **FACTS**

    A. **Fraudulent Scheme - Material Misrepresentations**

15. Since at least February 2020, Patton has held himself out to the public as a highly educated doctor in philosophy with degrees from prominent universities such as Georgetown University, University of Tennessee, Texas A&M University, and Louisiana State University. In fact, he does not have degrees from any of these universities.

16. On Star Oil's website (www.staroilandgascompanies.webstarts.com), Patton describes his company as a global enterprise that operates around the world, generates annual revenues of $16 billion and has over 32,000 employees. The website also contains images of computer-generated maps that falsely depict locations of the company's operations and sites of over 3,500 active offshore oil platforms off the coast of Texas, Louisiana, and Mississippi. For example, the images below are copied from the Star Oil website:



6

17. In furtherance of his scheme to defraud investors, Patton submitted over 30 Form D Notice filings[3] claiming various safe harbor exemptions from securities registration for Star Oil, North Gulf, and Patton Farms on SEC's EDGAR website. The Defendants falsely claimed to have raised hundreds of billions of dollars from investors in dozens of exempt private offerings conducted since February 2020. The Defendants' Form D filings also falsely claimed that Patton received at least $387 million in management fees and other compensation from the companies in the past three years.

18. The Form D filings included additional false statements, such as:

- *Principal Place of Business for Star Oil and North Gulf – 1445 Ross Ave., Dallas, TX.* None of the Defendants leased office space or contracted with tenants.

- *CEO Contact information – 11 Casuarina Concourse, Coral Gables, FL.* Patton falsely lists this address as his residence on Star Oil, North Gulf and Patton Farms Form D filings and on state corporate records. Property records show that Patton does not own or reside at the $45 million estate.

- *Minimum Investment accepted from any outside investor - $5 million.* Patton solicited investors and sold investments for a few thousand dollars.

- *Use of Proceeds – "Day to Day Running of the Company."* There is no evidence that Patton used investors' funds to operate any of the companies.

---

[3] Form D is used to file a notice of an exempt offering of securities with the SEC. The federal securities laws require the notice to be filed by companies that have sold securities without registration under the Securities Act in an offering made under Rule 504 or 506 of Regulation D or Section 4(a)(5) of the Securities Act. A company must file this notice within 15 days after the first sale of securities in the offering.

19. None of Patton's claims about his companies are true. Patton has not raised billions of dollars in investors' funds, nor has he received hundreds of millions of dollars to operate these companies. None of Patton's companies are operational, have any assets, or generate any revenues. Patton fabricated everything that he told investors about himself and his companies and everything he included in his Form D filings. Patton did all of this to entice investors to purchase shares in his companies.

### B. Solicitation of Investors and Misappropriation of Investor Funds

#### 1. Solicitation of Investors

20. During the relevant period, Patton spoke with investors in person and on the telephone, and told investors elaborate stories about his companies and their success. He told investors that Star Oil had contracts with Chevron and Texaco, had extensive operations throughout the southeast and Gulf of Mexico and told at least one investor that the company was investing in solar production in California. Patton made similar claims about North Gulf to at least one investor.

21. Patton promised investors substantial returns on investments and large monthly dividend payments. He also promised at least one investor that she would receive a non-voting position on Star Oil's board. Patton also told that investor that Star Oil and Patton Farms were publicly traded companies. Moreover, Patton created bogus documents to show investors his annual salary. Patton provided at least one investor with a phony shareholder agreement that

stated Patton's annual salary as President of Star Oil was $280,966,500; Patton presented a fake Star Oil income statement to another investor that showed Patton earned $36,000 per month.

22. Patton's grift knew no bounds. In one instance, Patton introduced himself to a senior citizen living in Fremont, California, as a legal liaison and health care advocate. Patton convinced her that he would be able to assist her gain guardianship over her 95-year-old father. Desperate for assistance, she trusted Patton who advised her that as part of her application for guardianship, she would have to show that she could support her father financially.

23. Patton used this situation to his advantage and aggressively solicited her to purchase stocks in Star Oil and Patton Farms. Patton sent this investor a Star Oil shareholder agreement, which stated that she would receive dividend payments of $3,460 per month. Patton told this individual she could use the returns and dividends she earned from her investments to show that she was able to financially support her elderly father, which was particularly important to her. The investor purchased Star Oil and Patton Farms' stock from Patton through five separate transactions from September through December 2021.

24. In at least two other instances, between June and November 2022, Patton used his personal relationships with investors to persuade them to invest in his companies. Patton promised one of those investors that the investor would receive the full amount of his investment plus interest within a few months. Patton also promised this investor that the investor would become the head of Star Oil's

trucking transportation unit. Patton even had the investor speak on the phone with an individual who Patton had purportedly hired as one of the trucking transportation unit's newest drivers.

25. Patton directed investors to send money to his personal Cash App and Capital One bank account, which they did. Investors sent their money to Defendants in reliance on Defendants' materially false representations about their companies' performance, potential investment profits, and Patton's business and education experience. Patton falsely assured investors that their investments would receive substantial returns and large monthly dividend payments.

26. Defendants continue to evade all investor requests to return funds. Patton has not returned the calls, text, or email messages of at least two investors who attempted to inquire about the promised returns on their investments and for a refund of their investments. Another investor questioned Patton about dividend payments that were owed to her, Patton assured the investor that Defendants would make the payments, promising the investor that he would have his secretary contact the investor with information regarding the dividend payment. However, Patton never paid this investor or any investor the promised dividends or returns on their investments.

### 2. Misappropriation of Investor Funds

27. Patton did not use any of the investors' funds as promised. Instead, Patton misappropriated all the money he raised through the sales of his companies' stocks. Patton created his companies in an effort to dupe investors into giving him

10

money for his personal use. As investors deposited funds into Patton's Cash App and personal bank account, Patton comingled their funds with whatever other funds were in his account at that time and used those funds on personal items and expenses.

28. Analysis of the account records shows that Patton spent investors funds almost as soon as he received those funds, on food and travel, car maintenance, home repair, miscellaneous purchases, and large cash withdrawals including approximately:

- $9,900 branch and atm withdrawals;
- $23,520 home repairs and materials;
- $1,856 food and travel;
- $8469 Car maintenance and repairs; and
- $9,965 miscellaneous purchases.

29. Patton has evaded all investors' requests to return funds. In an effort to avoid investors, Patton has not responded to their calls or emails, and routinely changed his phone number. Additionally, Patton provided investors with false information about the location of his companies and his personal residence. To date, the Defendants have not returned any of the investors' money.

## V.  CLAIMS FOR RELIEF

### COUNT I

### Violations of Section 17(a)(1) of the Securities Act

30. The Commission adopts by reference paragraphs 1 through 29 of this Complaint.

31. During the relevant period, Defendants, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, knowingly or recklessly, directly or indirectly employed devices, schemes, or artifices to defraud.

32. By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT II

### Violations of Section 17(a)(2) of the Securities Act

33. The Commission adopts by reference paragraphs 1 through 29 of this Complaint.

34. During the relevant period, Defendants, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

35. By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

## COUNT III

## Violations of Section 17(a)(3) of the Securities Act

36. The Commission adopts by reference paragraphs 1 through 29 of this Complaint.

37. During the relevant period, Defendants, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently engaged in transactions, practices, or courses of business which have operated, are now operating or will operate as a fraud or deceit upon the purchasers.

38. By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

## COUNT IV

## Violations of Section 10(b) and Rule 10b-5(a) of the Exchange Act

39. The Commission adopts by reference paragraphs 1 through 29 of this Complaint.

40. During the relevant period, Defendants, directly or indirectly, using any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly employed devices, schemes or artifices to defraud in connection with the purchase or sale of any security.

41. By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act ]15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(a) [17 C.F.R. § 240.10b-5(a)].

## COUNT V

### Violations of Section 10(b) and Rule 10b-5(b) of the Exchange Act

42. The Commission adopts by reference paragraphs 1 through 29 of this Complaint.

43. During the relevant period, Defendants, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in connection with the purchase or sale of any security.

43. By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act, [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(b) [17 C.F.R. § 240.10b-5(b)].

## COUNT VI

### Violations of Section 10(b) and Rule 10b-5(c) of the Exchange Act

45. The Commission adopts by reference paragraphs 1 through 29 of this Complaint.

46. During the relevant period, Defendants, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly engaged in acts, practices, and courses of business which have operated, are now operating or will operate as a fraud upon any person in connection with the purchase or sale of any security.

47. By reason of the foregoing Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(c), [17 C.F.R. § 240.10b-5(c)].

48. Defendants, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, knowingly or recklessly employed a device, scheme, or artifice to defraud one or more clients or prospective clients.

49. By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate, Section 206(1) of the Advisers Act, 15 U.S.C. § 80b-6(1).

## VI. RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that this Court find the Defendants committed the violations alleged in this Complaint and,

### A. Permanent Injunctions

Issue Permanent Injunctions, enjoining Patton, Star Oil, North Gulf and Patton Farms from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].

### B. <u>Conduct-Based Injunction</u>

Issue a Conduct-Based Injunction, enjoining Patton from participating, directly or indirectly, including, but not limited to, through any entity he owns or controls, (1) participating in the issuance, purchase, offer, or sale of any security provided, however, that such injunction shall not prevent Patton from purchasing or selling securities for his own personal account; (2) exercising control over any commercial enterprise or project that issues, purchases or sells securities to any person other than Patton; and (3) controlling any EDGAR account other than an individual EDGAR account in his own name to comply with Patton's individual shareholder reporting obligations, if any; and (4) making any filings using the Commission's EDGAR system, other than filings related to Patton's individual shareholder reporting obligations, if any, pursuant to Section 21(d)(5) of the Exchange Act, 15 U.S.C. § 78u(d)(5).

### C. <u>Disgorgement and Prejudgment Interest</u>

Issue an Order directing Patton, Star Oil, North Gulf and Patton Farms to disgorge all ill-gotten gains received within the applicable statute of limitations, including prejudgment interest, resulting from the acts and/or courses of conduct alleged in this Complaint.

### D. <u>Civil Penalty</u>

Issue an Order directing Patton, Star Oil, North Gulf and Patton Farms to pay a civil money penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

### E. Officer and Director Bar

Issue an Order, pursuant to Section 20(e) of the Securities Act [15 U.S.C. §77t(e)], and Section 21(d)(2) of the Exchange Act [15 U.S.C. §78u(d)(2)], permanently barring Patton from acting as an officer or director of any issuer that has a class of securities registered with the Commission pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

### F. Order to Deactivate Star Oil's Website

Issue an Order directing Star Oil and Patton to permanently deactivate the site *www.staroilandgascompanies.webstarts.com* so that it is not viewable to internet users in order to halt any potential further dissemination of false statements, pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)].

### G. Further Relief

Grant such other and further relief as may be necessary and appropriate.

### H. Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

## VII. DEMAND FOR JURY TRIAL

The Commission hereby demands a trial by jury on any and all issues in this action so triable.

September 29, 2023               Respectfully submitted,


                         By:   s/Alise Johnson
                               Alise Johnson
                               Senior Trial Counsel
                               Florida Bar No. 0003270

                               Attorney for Plaintiff
                               **Securities and Exchange Commission**
                               801 Brickell Avenue, Suite 1950
                               Miami, FL 33131
                               Telephone: (305) 982-6300
                               Facsimile: (305) 536-4154